UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

GEMINI INSURANCE COMPANY,

    Plaintiff,

vs.

NORTH AMERICAN CAPACITY INSURANCE COMPANY, AND DOES 1-10,

    Defendants.

3:14-cv-00121-LRH-WGC

ORDER

Before the Court is Gemini Insurance Company's ("Gemini") Motion for Partial Summary Judgment. Doc. #16.[1] Also before the Court is Defendant North American Capacity Insurance Company's ("North American") Response and Cross-Motion for Partial Summary Judgment. Doc. #21. Gemini and North American each respectively filed Responses and Replies. Doc. #22; Doc. #24.

**I.    Factual Background**

This case involves the responsibilities of two insurance companies to defend a suit against the insured contractor in an underlying Nevada state action titled *The Pointe Homeowners Association v. Valentine Construction, et al.* ("Underlying Case"). Doc. #16-3, Ex. 4. At issue in the Underlying Case was responsibility for repair work performed at property known as The Pointe at Third Creek, located in Incline Village, Nevada. *Id.* ¶0.1. On September 11, 2002, the HOA entered into an agreement with Valentine whereby Valentine would repair decks that were damaged by another contractor. Doc. #16 at 2. Valentine then retained Olsen

---

[1] Refers to the Court's docket number.

Construction Company ("Olsen") to provide labor and materials for Valentine's deck repairs. *Id.* at 3. Olsen conducted repair work on the premises between 2002 and 2003. Doc. #21 at 8; Doc. #21-4, Ex. H at 3.

Gemini issued three separate policies to Olsen: the first spanning September 12, 2002, to September 12, 2003; the second September 13, 2003, to November 18, 2003; and the third January 16, 2004, to February 15, 2005. Doc. #21 at 10-11. Subsequently, North American and Olsen entered into a Commercial General Liability Insurance Contract ("the Policy") to be effective February 15, 2005, to February 15, 2006. The Policy states that North American "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." Doc. #16-3, Ex. 7 at NAC-000195. The Policy only applies to property damage if the damage "is caused by an 'occurrence' that takes place in the 'coverage territory'" and "during the policy period." *Id.* The Policy asserts a number of exclusions, but most notable to the present Motions are the designated work exclusion and the pre-existing damage exclusion. The designated work exclusion states that the Policy does not apply to work conducted by Olsen itself for new construction of residential units, remodeling of existing units, or work performed on behalf of residential homeowners associations. *Id.* at NAC-000227. The pre-existing damage exclusion states that North American has "no duty to defend" for property damage that "first occurred prior to the inception date of this policy" or "is in the process of occurring as of the inception date of this policy." *Id.* at NAC-000218.

The HOA sued Valentine on August 11, 2010. *See id.*, Ex. 2. On September 11, 2012, Valentine filed a third-party complaint naming Olsen as a third-party defendant. *See id.*, Ex. 5. Gemini agreed to defend Olsen in the Underlying Case on July 16, 2010. Doc. #21 at 9. Gemini tendered the case to North American on November 28, 2012. *Id.* at 9-10. North American issued a letter declining to defend Olsen on January 17, 2013. *Id.* at 10. Gemini filed suit against North American in Nevada state court on February 5, 2014, stating causes of action for (1) declaratory relief, (2) equitable contribution and reimbursement of defense fees and costs, and (3) equitable

2

contribution and reimbursement of settlement dollars. Doc. #1-1 at 9-11. North American removed the case to federal court on March 6, 2014, on the basis of diversity of citizenship. Doc. #1 at 2. Here, Gemini seeks declaratory and equitable relief related to North American's duty to defend Olsen in the Underlying Case. Doc. #16 at 1. North American seeks summary judgment on the ground that the undisputed facts did not raise a potential for coverage under the Policy. Doc. #21 at 1.

**II.     Legal Standard**

    **A.     Summary Judgment**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On an issue as to which the nonmoving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v.*

*Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party.  *See id.* at 252. "[S]peculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

When considering cross-motions for summary judgment, courts "must review the evidence in support of each cross-motion." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted).  Rather, a court is entitled to rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." *Id.*

**B.     Nevada Insurance Law**

Under Nevada law, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to a potential for coverage under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)).  "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured." *Id.* (citing *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988)).  "Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint [in the underlying action] with the terms of the policy." *Id.* (citing *Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1212 (9th Cir. 1990)).  Thus, an insurer may only deny coverage when, based on the facts pleaded in

1    the complaint, there is no potential for arguable or possible coverage under the policy. *Id.*

2    An insurance policy "is enforced according to its terms to effectuate the parties' intent,"
3    *Burrows v. Progressive Cas. Ins.*, 820 P.2d 748, 749 (Nev. 1991), and "is to be judged from the
4    perspective of one not trained in law or in insurance, with the terms of the contract viewed in
5    their plain, ordinary and popular sense," *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev.
6    1993) (citing *Nat'l Union Fire Ins. Co. v. Reno's Exec. Air*, 682 P.2d 1380, 1382 (Nev. 1984)).
7    Any limitation in policy coverage must "clearly and distinctly communicate[] to the insured the
8    nature of the limitation." *Reno's Exec. Air*, 382 P.2d at 1382. Where a limitation lacks clarity,
9    "ambiguities are to be resolved in favor of the insured." *Farmers Ins. Exch. v. Neal*, 64 P.3d
10   472, 473 (Nev. 2003) (internal citations omitted).

11   "[T]he duty to defend may exist even where coverage is in doubt and ultimately does not
12   develop." *Kazi v. State Farm Fire and Cas. Co.*, 24 Cal. 4th 871, 879, 15 P.3d 223 (2001)
13   (internal quotation marks omitted).[2] "Any doubt as to whether the facts establish that the duty to
14   defend exists must be resolved in the insured's favor." *Id.* However, "where there is no
15   possibility of coverage, there is no duty to defend." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th
16   1, 19, 900 P.2d 619 (1995). "[F]or an insurer, the existence of a duty to defend turns not upon
17   the ultimate adjudication of coverage under its policy of insurance, but upon those facts known
18   by the insurer at the inception of the third party lawsuit." *Montrose Chem. Corp. v. Superior*
19   *Court*, 861 P.2d 1153, 1157 (Cal. 1993).

20   Once plaintiff establishes that damages are potentially covered under a policy, the
21   defendant "must conclusively establish the absence of *any potential* for coverage in order to
22   prevail on the duty-to-defend issue." *Anthem Elecs., Inc. v. Pac. Emps. Ins. Co.*, 302 F.3d 1049,
23   1055 (9th Cir. 2002) (citing *Montrose*, 861 P.2d at 1160). Thus, to support a finding of summary
24   judgment against Gemini, North American "must show that there is no genuine issue of material
25   fact as to the potential for coverage." *Id.* "[T]he insured must prove the existence of a *potential*

---

[2] "In the context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to persuasive precedent from other jurisdictions, especially California." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1235 (D. Nev. 2010).

5

*for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove it *cannot*." *Montrose*, 861 P.2d at 1161 (emphasis in original).

### III.  Discussion

Gemini argues that North American must reimburse Gemini for part of the cost of defending Olsen in the Underlying Case because the language of the Policy and underlying complaint created at least a possibility that North American had a duty to defend Olsen for the liabilities. North American argues that it is not required to reimburse Gemini for a portion of Olsen's defense because two exclusions in the Policy indicated that there was *no possibility* that North American had a duty to defend Olsen. To prevail on its motion for summary judgment, Gemini bears the initial burden of establishing that the Policy states a possibility of coverage. If Gemini meets this burden, North American must conclusively establish that there was no possibility that it had a duty to defend in order for the Court to grant summary judgment in its favor.

### A.  Possibility of Coverage

The Underlying Case alleged that Valentine's repairs were "defective, unsafe and/or unsuitable for the intended use and purpose" and that as a result of the defects, the property had "been damaged and required repair and/or replacement." Doc. 16-3, Ex. 4 ¶0.8. Valentine's third-party complaint in the Underlying Case alleged that in cases where construction defects arise "due to the conduct, acts or omissions of [Valentine's] subcontractors, workers, laborers, vendors and material suppliers," Valentine can bring a claim against third party defendants, including Olsen. *Id.*, Ex. 5 at 2-3. Additionally, the third-party complaint states that third-party defendants "are obligated to indemnify and hold [Valentine] harmless by virtue of the involvement of each of the Third-Party Defendants in the work performed and materials supplied at the subject property." *Id.* at 5.

A claim must fulfill four requirements in order for there to be a possibility of coverage under the Policy: it must include (1) an "occurrence" of (2) "property damage," (3) within the

"coverage territory," and (4) during the Policy period. *See id.*, Ex. 7 at NAC-000195.[3] Gemini argues that the "occurrence" prong has been met because Nevada law states that an "occurrence" can either occur during construction or after construction, so long as the occurrence causes property damage. Doc. #16 at 10. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, Ex. 7 at NAC-000206. Although faulty workmanship itself cannot constitute an occurrence under Nevada law, "an unexpected happening caused by faulty workmanship could be an occurrence." *Big-D Constr. Corp. v. Take it for Granite Too*, 917 F. Supp. 2d 1096, 1108 (D. Nev. 2013). Accordingly, Olsen's alleged faulty workmanship could constitute an occurrence under Nevada law, and thereby create a possibility of coverage under the Policy even if the faulty workmanship occurred when Olsen conducted its repairs.

Gemini also argues that the "property damage" prong has been met because the underlying complaint alleges that Valentine—and by extension Olsen—conducted faulty workmanship that led to property damage on the premises. *See* Doc. #16-3, Ex. 4 ¶0.8. 0.14. The Policy defines "property damage" as (a) "[p]hysical injury to tangible property, including all resulting loss of use of that property," or (b) "[l]oss of use of tangible property that is not physically injured." *Id.*, Ex. 7 at NAC-000207. The Underlying Case alleges that property damage occurred following Olsen's "improper deck repair, causing leaking, water damage and mold to the structures, improper window repair causing leaking, water damage and mold, and damage and stained sliding glass door causing leaking water damage and mold as a result of water intrusion." Doc. #16-3, Ex. 4 ¶¶0.8, 0.14. Comparing the Policy to the underlying complaint shows that the Policy language is unambiguous, and clearly creates the potential for coverage for the damage described in the underlying complaint.

---

[3] The Policy's insuring agreement states, in relevant part:
b.   This insurance policy applies to "bodily injury" and "property damage" only if:
     (1) The "bodily injury" or *property damage* is caused by an *occurrence* that takes place in the "*coverage territory*; and
     (2) The "bodily injury" or "property damage" occurs *during the policy period*.
Doc. #16-3, Ex. 7 at NAC-000195 (emphasis added).

1    The Supreme Court of Nevada has held that similar policy language is unambiguous, and that the "meaning of the word 'occurrence' and the phrase 'property damage,' read together, require that a tangible, physical injury occur during the policy period in order to trigger coverage." *United Nat'l Ins. Co.*, 99 P.3d at 1154-55. Ostensibly, this language indicates that Gemini must produce evidence that the damage occurred during the Policy period in order to prevail on its summary judgment motion.[4] Applying California law, the Northern District of California expressly rejected this argument, holding that "plaintiffs' burden is merely to show that there was the *potential* for liability, by reference to facts available to the insurer at the time the insured tenders its claim for a defense, or at the time of denial of coverage." *Carlson v. Century Sur. Co.*, 832 F. Supp. 2d 1086, 1092 (N.D. Cal. 2011) (internal citations omitted). The court added that in a summary judgment motion, "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Id.* (quoting *Horace Mann Ins. Co. v. Barbara B.*, 845 P.2d 792, 796 (Cal. 1993)). Applying Nevada law, this court has held that even where a contractor performs work before a policy begins, such work triggers a duty to defend when there is a potential that the property damage occurred during the policy period. *N. Ins. Co. of N.Y. v. Nat'l Fire & Marine Ins. Co.*, 953 F. Supp. 2d 1128, 1134 (D. Nev. 2013). Accordingly, a plaintiff must prevail on a summary judgment motion so long as facts available to the insurer at the time that the insured requests a defense raise the potential for coverage under the policy, even if the plaintiff has not established that the property damage occurred during the policy period.

Gemini has met its initial burden to show that North American had a duty to defend because the Underlying Case clearly alleged the existence of an occurrence of property damage as defined by the Policy—and therefore showed a possibility of coverage. Accordingly, the Court must grant Gemini's Motion for Summary Judgment unless North American establishes with conclusive proof that one of the Policy exclusions applies.

---

[4] There is no dispute that the property damage here occurred within the "coverage territory," which is defined, in relevant part, as "The United States of America (including its territories and possessions), Puerto Rico and Canada." Doc. #16-3, Ex. 7 at NAC-000204.

### B. Policy Exclusions

North American bases its Cross-Motion for Summary Judgment on application of two exclusions in the Policy: the designated work exclusion, and the pre-existing damage exclusion. In order for the Court to grant summary judgment, North American "must show that there is no genuine issue of material fact as to the potential for coverage." *Anthem Elecs., Inc.*, 302 F.3d at 1055 (citing *Montrose*, 861 P.2d at 1160). If North American establishes that either of the exclusions claimed by North American applies, then there would be no potential for coverage under the Policy, and the Court could grant summary judgment in North American's favor.

#### 1. Designated Work Exclusion

The designated work exclusion states that North American has no duty to defend Olsen for its own work, defining "your work" as (1) new construction of residential units, (2) remodeling or conversion of an existing apartment, or (3) operations "conducted by [Olsen] or on [Olsen's] behalf for residential homeowners associations." Doc. #16-3 at NAC-000227. North American argues that it never had a duty to defend Olsen because the pleadings in the Underlying Case allege that Olsen performed operations for the HOA, indicating that Olsen's conduct fell squarely within the designated work exclusion. Doc. #21 at 18. Gemini argues that the language of the exclusion is ambiguous, and that it therefore must be interpreted in the light most favorable to the insured. Doc. #22 at 6. Specifically, Gemini argues that the exclusion does not clearly identify whether it refers only to conduct during the Policy period, or if it also applies to work performed by Olsen before the Policy went into effect. *Id.* at 6-7. Additionally, Gemini argues that the phrase "operations conducted by you or on your behalf for residential homeowner associations" is ambiguous because it is unclear whether it applies to Olsen given that Olsen contracted with Valentine, and did not have a direct relationship with the HOA.[5] *Id.* at 7.

///

---

[5] To support this argument, Gemini refers to the contract between Valentine and the HOA, which states that if Valentine hires a subcontractor to perform part of the work under the contract, "[n]othing contained in the contract documents shall create any contractual relationship between any subcontractor or supplier and owner." Doc. #16-3, Ex. 9 at VC000268.

1    The Policy must be interpreted based on the "plain meaning" of its terms. *Waller*, 11 Cal. 4th at 18. Any limitation in policy coverage must "clearly and distinctly communicate[] to the insured the nature of the limitation." *Reno's Exec. Air*, 682 P.2d at 1382. Where a limitation lacks clarity, "ambiguities are to be resolved in favor of the insured." *Neal*, 64 P.3d at 473 (internal citations omitted). A policy is ambiguous "if it is susceptible to more than one reasonable interpretation." *Mont. Refining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 918 F. Supp. 1395, 1398-99 (D. Nev. 1996).

Nevada and California case law concerning the applicability of designated work exclusions to conduct that occurred before a policy is sparse, but federal courts in California have held that designated work exclusions are not ambiguous when they clearly define what constitutes "your work" and state a time period for the relevant work. The Southern District of California has held that the language of a designated work exclusion was not ambiguous when the provision defined "your work" as "all work completed prior to the first date of continuous insurance coverage provided by" the insurance company. *Ausmus v. Lexington Ins. Co.*, No. 08-cv-2342, 2009 WL 1098627, at *3 (S.D. Cal. Apr. 22, 2009). The court held that the exclusion was unambiguous because by its clear language, "it exclud[ed] designated work from coverage. It then [went] on to explain what work [was] excluded." *Id.* The Eastern District of California has held that a designated work exclusion was valid where it expressly excluded coverage "arising out of work or operations conducted on new residential property, . . . prior to the certificate of occupancy." *Bankers Ins. Co. v. Sisemore*, No. 1:08-cv-1865, 2009 WL 1309277, at *6 (E.D. Cal. May 11, 2009).

Gemini argues that the phrase "conducted by you or on your behalf for residential homeowners associations" is ambiguous as to time, and as a result of this ambiguity, the exclusion "could be interpreted as [applying to] operations conducted only during the [North American] Policy's effective dates." Doc. #16 at 14. North American argues that the absence of a time limitation is not ambiguous, and merely indicates that "the contracting parties ([North American] and Olsen) had no intention of including any type of time limitation [in] the Designated Work Exclusion." Doc. #21 at 18. This argument gives insufficient weight to the

10

1  fact that Nevada courts view insurance contracts as contracts of adhesion, meaning that the
2  insured does not have an opportunity to negotiate the terms, and courts therefore interpret
3  insurance contract language broadly "to afford the greatest possible coverage to the insured."
4  *United Nat'l Ins. Co.*, 99 P.3d at 1156 (internal quotation marks omitted).  The Court therefore
5  finds that while the phrase "conducted by you or on your behalf" is unambiguous as to what work
6  is covered, the designated work exclusion as a whole is ambiguous with respect to the dates for
7  which it applies, meaning that the Court must interpret the exclusion in the light most favorable
8  to the insured.[6]  *Vitale*, 5 P.3d at 1057.  If, for example, the exclusion only applies to Olsen's
9  work performed during the Policy period, then it does not exclude coverage for Olsen's work
10 between 2002 and 2003, which could have resulted in property damage during the Policy period.
11         Given the ambiguity in the designated work exclusion, North American has not met its
12 burden to establish that there was no possibility of coverage such that it did not have a duty to
13 defend Olsen in the Underlying Case.  Accordingly, the Court does not grant North American's
14 Motion for Summary Judgment on this ground.

15                    **2.    Pre-Existing Damage Exclusion**

16         North American argues that even if the designated work exclusion does not apply, it had
17 no duty to defend Olsen in the Underlying Case because the pre-existing damage exclusion
18 shows that there was no possibility for coverage under the Policy.  The pre-existing damage
19 exclusion states that the Policy does not apply to property damage that (1) first occurred prior to
20 the date the Policy began, or (2) was "in the process of occurring" prior to the date the Policy
21 began.  Doc. #16-1, Ex. 7 at NAC-000188.  North American argues that it never had a duty to
22 defend Olsen because extrinsic evidence indicates that the defective work causing the property

---

[6] North American argues further that the designated work exclusion is not ambiguous because the use of the past tense "conducted" indicates that the term "includes all operations performed in the past." Doc. #21 at 17.  The Court finds, however, that the word "conducted" is susceptible to more than one reasonable interpretation, in that insured could reasonably believe that it applied only to work performed during the policy period.  *See Griffin v. Old Republic Ins. Co.*, 133 P.3d 251, 256 (Nev. 2006) ("An exclusionary provision excludes coverage for certain activities from the outset of the insurance contract.").  Accordingly, without a time modifier, the phrase is ambiguous and must be interpreted in the light most favorable to insured.  *Mont. Refining Co.*, 918 F. Supp. at 1398-99.

1  damage at issue in the Underlying Case occurred well before the North American Policy went
2  into effect on February 15, 2005.  Gemini argues that summary judgment is inappropriate on this
3  ground because the underlying complaint does not specify the date on which the property damage
4  occurred, and North American has not produced any evidence that the property damage occurred
5  prior to February 15, 2005.

6       In *United National Insurance*, the Nevada Supreme Court addressed a similar policy
7  limitation.  *See* 99 P.3d at 1154.  The action between insurers for contribution arose out of a
8  negligence claim against the insured subcontractor for property damage caused by the collapse of
9  the Las Vegas Hilton marquee sign in July of 1994.  *Id.* at 1154-56.  Plaintiff insurer defended
10 the insured, but defendant insurer denied coverage, asserting that the "property damage" did not
11 occur during the policy period.  *Id.*  The court concluded that defendant insurer did not have a
12 duty to defend the insured because the underlying negligence complaint "only alleged that the
13 sign suffered physical, tangible injury when it collapsed on July 18, 1994, nearly three months
14 after [their] policy expired."  *Id.* at 1159.  The court reasoned that regardless of when the
15 allegedly negligent and defective work occurred, it did not experience property damage until it
16 was "altered in appearance, shape, color or in other material dimensions."  *Id.* (citing with
17 approval *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496 (Ill. 2001)).  Ultimately, the
18 court reversed the lower court's ruling granting summary judgment to plaintiff insurer because
19 the underlying complaint alleged that the property damage occurred after the policy expired.

20      The timing of a construction defect does not necessarily correlate with the timing of the
21 property damage.  Rather, "the duty to defend is only triggered when there is an 'occurrence' or a
22 physical manifestation of 'property damage' during the relevant policy period." *Nat'l Fire &*
23 *Marine Ins. Co. v. Redlands Ins. Co.*, No. 3:13-cv-0144, 2014 WL 3845153, at *4 (D. Nev. Aug.
24 5, 2014).  This Court recently held that summary judgment based on application of a policy
25 exclusion was not appropriate where the underlying complaint did not clearly identify when the
26 property damage occurred.  *Id.* at *5 ("Because the date on which the property damage occurred
27 is not ascertainable from the Underlying Complaint, the Court cannot conclude that there was no
28 potential for arguable or possible coverage under the policies.").  In another case, this court held

1  that coverage was "arguable or possible" where the complaint was silent as to the timing of when
2  the property damage occurred because "it was possible that although [the contractor] ceased
3  working on the property [before the policy], property damage did not occur until after" the policy
4  went into effect. *N. Ins. Co. of N.Y.*, 953 F. Supp. 2d at 1134.

5  Similarly, the Underlying Case here does not identify a date on which the property
6  damage is alleged to have occurred, nor does it state a date before which the property damage is
7  alleged to have occurred.[7] Instead, it merely alleges that the repairs "were defective, unsafe
8  and/or unsuitable for the intended use and purpose in numerous particulars" that were identified
9  throughout the complaint. *See* Doc. #16-3, Ex. 4 ¶¶0.8-0.9, 0.14. Given that the underlying
10 complaint was filed on August 11, 2010, and the Policy between North American and Olsen
11 began February 15, 2005 and lasted until February 15, 2006, there remains a factual dispute as to
12 whether the property damage occurred during the Policy period.

13 North American argues that Gemini previously acknowledged that the property damage at
14 issue occurred before North American insured Olsen because a lawyer for the underlying plaintiff
15 stated that "[t]he water intrusion appears to have been on-going since the original work of
16 Valentine Construction." Doc. #21-4 at 1. Gemini argues that this letter cannot be considered
17 evidence that the damage pre-dated the North American Policy because the author was "an
18 attorney, not a construction expert," and was merely expressing an opinion. Doc. #22 at 4. More
19 persuasively, a sentence earlier in the letter states that the attorney "observed the water intrusion
20 *and* consequential damages to the building components." Doc. #21-4 at 1 (emphasis added).
21 Even if the water intrusion predated the North American Policy, this does not foreclose the
22 possibility that the property damage at issue here occurred during the Policy. *See Nat'l Fire &*
23 *Marine Ins. Co.*, 2014 WL 3845153, at *4 ("[T]he duty to defend is only triggered when there is
24 an 'occurrence' or a physical manifestation of 'property damage' during the relevant policy

---

[7] The Underlying Complaint is not pleaded with any particular specificity, thereby lending itself to various plausible interpretations. As the court noted in *United National Insurance v. Assurance Company of America*, "this further supports the Court's conclusions as unspecific allegations are more likely to create a situation where coverage exists that is not immediately obvious." No. 2:10-cv-01086, 2012 WL 1931521, at *3 n.1 (D. Nev. May 29, 2012).

period."); *see also Sully-Jones Contractors, Inc. v. Am. Safety Indem. Co.*, No. 08-cv-1976, 2010 WL 1839114, at *4 (S.D. Cal. May 6, 2010) (denying summary judgment where there were "no undisputed facts or legal authority" to establish whether the pre-existing damage exclusion applied). Thus, even if the water intrusion began prior to the Policy, this would not establish that there was no potential for coverage because North American has still failed to produce evidence that the consequential property damage did not occur during the Policy.

Finally, North American argues that Gemini's own actions indicate that the property damage at issue occurred before the North American Policy. Specifically, North American emphasizes that in defending Olsen, Gemini only triggered coverage under a policy that lasted between September 12, 2002 and September 12, 2003, and did not trigger its two subsequent Gemini policies that predated the North American Policy. Gemini states that this is not an acknowledgment that the property damage occurred between 2002 and 2003, but that its claims administrator merely "allocated payments on a discretionary basis, based on contemporaneous investigation and related contemporaneous uncertainty regarding the timing of any covered occurrence or property damage." Doc. #21-4, Ex. L at 2. Although North American's argument is well taken, the Gemini policy included many exclusions, and North American has produced no evidence to cast doubt on Gemini's statement that the decision to trigger the first policy was discretionary, or that the decision not to trigger the second and third Gemini policies was based on the pre-existing damage exclusion. Accordingly, the Court declines to grant summary judgment in North American's favor based on the pre-existing damage exclusion because disputed material facts remain as to when the property damage occurred.[8]

///

///

///

---

[8] "As a general rule, an insured's loss should be 'equitably distributed among those who share liability for it in direct ratio to the portion each insurer's coverage bears to the total coverage provided by all the insurance policies.'" *Great Am. Ins. Co. of N.Y. v. N. Am. Specialty Ins. Co.*, 542 F. Supp. 2d 1203, 1212 (D. Nev. 2008) (quoting *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 304 (Cal. Ct. App. 1998)).

**IV.   Conclusion**

IT IS THEREFORE ORDERED that Gemini's Motion for Partial Summary Judgment (Doc. #16) is GRANTED.

IT IS FURTHER ORDERED that North American's Motion for Partial Summary Judgment (Doc. #21) is DENIED.

IT IS SO ORDERED.

DATED this 5th day of February, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE