1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19 **IN THE UNITED STATES DISTRICT COURT**

20 **FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| 21 GEMINI INSURANCE COMPANY, | Case No. 3:14-cv-00121-LRH-WGC |
| 22 | **ORDER REGARDING** |
| 23 Plaintiff, | **STIPULATED MOTION TO STRIKE AND VACATE ORDERS** |
| 24 v. | **[DOC. # 26 and 32] PURSUANT TO CONDITIONAL SETTLEMENT** |
| 25 NORTH AMERICAN CAPACITY | **BETWEEN GEMINI INSURANCE** |
| 26 INSURANCE COMPANY, AND DOES 1-10, | **COMPANY AND NORTH AMERICAN CAPACITY** |
| 27 | **INSURANCE COMPANY** |
| 28 Defendants. | |

Plaintiff Gemini Insurance Company and Defendant North American Capacity Insurance Company (collectively "Parties") have reached a conditional settlement, to eliminate continued litigation in this Court and subsequent appellate proceedings which would likely result in the Parties incurring fees and costs cumulatively exceeding the entire value of Plaintiff's original claims. The settlement would also promote judicial efficiency. The settlement is particularly appropriate in this matter, which involves atypical facts and an insurance endorsement form created in December 2002, making it unlikely that the Parties' specific disputes concerning the application of that endorsement form will ever require similar litigation.

The settlement is conditioned on having two orders in this case vacated, namely:

(1)    The Court's February 6, 2015 Order [Doc. 26] granting Plaintiff Gemini Insurance Company's ("Gemini") Motion for Partial Summary Judgment [Doc. 16] and denying North American Capacity Insurance's ("North American") Counter-Motion for Summary Judgment [Doc. 21]; and

(2)    The Court's April 3, 2015 Order [Doc. 32] denying North American's Motion for Reconsideration of the February 6, 2015 Order.

The Parties' stipulated request and joint motion to vacate those orders is supported by Federal Rules of Civil Procedure and federal precedent. The alternative is continued litigation and trial in this Court, followed by appellate proceedings and potential further litigation on remand, with cumulative fees and costs likely to exceed the dollars at issue.

## I.

## PROCEDURAL BACKGROUND

On January 14, 2014, Gemini filed a Complaint for Declaratory Relief and Equitable Contribution against North American in the Second Judicial Court of the State of Nevada (Case No. CV14 00096). Based on diversity of citizenship, the Complaint was removed to the Federal District Court for the District of Nevada [Doc. No. 1].

In its Complaint, Gemini seeks reimbursement of defense expenses and settlement money paid on behalf of mutual insured Olsen General Contractors in an underlying construction defect action. The Parties filed Cross-Motions for Summary Judgment

regarding North American's Duty to Defend [Doc. Nos. 16 and 21].

On February 6, 2015, the Court issued an Order Granting Gemini's Motion and Denying North American's Motion [Doc. No. 26]. On February 20, 2015 North American filed a Motion for Reconsideration regarding the February 6, 2015 Order [Doc. No. 27]. On April 3, 2015, the Court issued an Order Denying North American's Motion for Reconsideration [Doc. No. 32].

The Parties have since engaged in settlement discussions and have agreed on a monetary settlement number which is contingent on the Court granting the Stipulated Motion to Strike and Vacate the Orders pertaining to the Parties' Cross-Motions for Summary Judgment [Doc. Nos. 26 and 32].

Due to its concerns that the Orders have the potential to cause confusion and generate future litigation regarding the application of Designated Work Exclusions (including versions of that exclusion not at issue in the instant matter), North American had intended to seek appellate review of the duty to defend issue addressed in the Orders.

Given the atypical underlying facts and the circumstance that the Parties' primary dispute in this case arises from an endorsement that is more than twelve years old, the specific disputes reflected in Gemini's  motion for summary judgment are unlikely to reoccur between the Parties. Gemini accordingly agreed with North American to stipulate and request that the Court strike and vacate the Orders to facilitate a settlement that would be efficient for this Court and the Parties.  If the Court grants the Stipulated Motion, the Parties will fully settle all issues in this case, and there will be no trial or subsequent appellate process.

The Parties therefore submit the instant Stipulated Motion to Strike and Vacate the Orders [Doc. Nos. 26 and 32].

/ / /

/ / /

/ / /

/ / /

1

## II.

2

## LEGAL ARGUMENT

3      Federal Rule of Civil Procedure 54(b) governs non-final judgments, including

4   "any order or other decision, however designated, that adjudicates fewer than all the

5   claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b).[1]

6   Under Rule 54(b), this Court has wide latitude to revise prior orders and an order "may

7   be revised at any time before the entry of a judgment .... " Fed. R. Civ. P. 54(b).

8      Under Rule 54(b), district courts have complete power over non-final orders and

9   may vacate or revise them at any time, if doing so would be consonant with equity.

10  United States Gypsum Co. v. Pac. Award Metals, Inc., No. C 04-04941 JSW, 2006 WL

11  1825705, at *1 (N.D. Cal. July 3, 2006); De la O v. Arnold-Williams, No. CV-04-0192-

12  EFS, 2008 WL 4192033, at * 1 (E.D. Wash. Aug. 27, 2008) (quotation marks omitted);

13  See also, Cuviello v. Cal Expo, No. 2:11–CV–2456 KJM, 2014 WL 1379873 (E.D. Cal.

14  Apr. 8, 2014); Jaynes Corp. v. Amer. Safety Insurance Co. 2:10–cv–00764–MMD–

15  GWF, 2014 WL 8735102 (D.Nev. Dec. 2, 2014) (joint motion to vacate summary

16  judgment order per parties' conditional settlement, pursuant to FRCP 54(b) and 60(b)(6)

17  granted by court).  Copies of all Westlaw documents cited in this motion are collectively

18  attached as Exhibit 1.

       Courts that exercise Rule 54(b) power in the context of settlement have found

19  vacating a prior order is "consonant with equity" if there are no reasons suggesting the

20  order should not be vacated.  See, Midmountain Contractors, Inc. v. American Safety

21  Indem. No. C10–1239-JLR, 2013 WL 5492952 (W.D. Wash. Oct. 1, 2013).

22     In United States Gypsum, a district court in the Northern District of California

23  vacated several orders under Rule 54(b), including a summary judgment order and a

24  claims construction order, to facilitate settlement. (United States Gypsum, 2006 WL

25

26  ─────────────────────

27  [1] Federal Rule of Civil Procedure 60(b)(6) also authorizes federal courts to set aside final orders
    when that relief is justified.  See, In re International Fibercom, Inc. (9th Cir. 2007) 503 F.3d 933,
    940 (recognizing that Rule 60(b) should be "liberally applied" to "accomplish justice.")  See

28  also, In re Nybo (D.Nev. 2001) 263 B.R. 905 (granting parties' motion to vacate court opinion
    per Stipulation for Settlement, pursuant to Rule 60(b)).

1825705, at * 1.) The court in that case required only that the agreement to vacate "was a significant factor in successfully resolving this litigation," and that there were "no considerations that would justify denial of the motion." Id.

Likewise, in De la O, the court considered factors such as (1) whether all parties have agreed to vacate the order as a condition of the proposed settlement; (2) whether a former party to the action would be adversely affected by vacating the order; and (3) whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement. (De la O, 2008 WL 4192033, at * 1.)

In this case, all of the factors weigh in favor of vacating the Orders.  First, all parties, Gemini and North American, have joined in the Stipulated Motion requesting that the Court strike and vacate the Orders.  Next, there are no former parties to this action, and thus there is no party that can be adversely impacted if the Orders are vacated.

Finally, and most importantly, the benefits of the settlement outweigh costs of continuing the litigation, both in terms of litigation costs to the Parties as well as use of this Court's judicial resources.  While the monetary settlement amount agreed to by the parties is confidential, the Parties represent that they would be expected to collectively expend more than the monetary settlement amount in litigation expenses if this matter were to proceed through trial.  The Parties also agree that the duty to defend issue in this matter creates a high risk of appeal after trial, which would generate further litigation expenses, and possible remand to this Court.

Therefore, the Parties submit that granting the Stipulated Motion pursuant to Rule 54 is proper under the instant circumstance.  In granting this Stipulated Motion, the Court will fully dispose of the case.  This will allow the Parties to efficiently resolve their dispute without the use of any further judicial resources.

/ / /

/ / /

/ / /

### III.

### <u>CONCLUSION</u>

The Parties hereby stipulate and jointly request that the Court strike and vacate the Orders on the Cross-Motions for Summary Judgment [Docs. 26 and 32], which is a condition to the settlement of this action. If the Stipulated Motion is not granted, the Parties will necessarily proceed with litigation and trial, followed by appellate proceedings.  Given the limited scope of the Parties' legal disputes, and the dollars actually at issue versus the time and money that will be spent through conclusion of this action, the Court's approval of the Parties' request is in the interests of equity and efficiency, including judicial efficiency .

Date: June 15, 2015                    **WOLKIN CURRAN, LLP**

By:    */s/ Amy K. Thomas*
            Amy K. Thomas

Amy K. Thomas, Esq.
Nevada Bar No. 9276
Wolkin Curran, LLP
555 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:  (415) 982-9390
Facsimile:   (415) 982-4328
Email: athomas@wolkincurran.com
Attorney for Plaintiff GEMINI INSURANCE
COMPANY

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

2      Date: June 15, 2015                    **THE GRAD LAW FIRM**

3

4                                             By:    */s/ Laleaque Grad*
                                                     Laleaque Grad
5

6                                             Nevada Bar No.: 8475
                                              8275 South Eastern Avenue
7                                             Suite 200-352
                                              Las Vegas, NV 89123
8                                             Telephone: (702) 990-8387
                                              Email: lgrad@gradlawfirm.com
9

10                                            Attorney for Defendant NORTH AMERICAN
                                              CAPACITY INSURANCE COMPANY
11

12

13                                            **IT IS SO ORDERED.**

14
       Dated: this 18th day of June, 2015.
15                                            _____
                                              LARRY R. HICKS
16                                            UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

7

# Exhibit 1

# Appendix of Unpublished Federal Decisions

- United States Gypsum Co. v. Pac. Award Metals, Inc., No. C 04-04941 JSW, 2006 WL 1825705 (N.D. Cal. July 3, 2006);

- De la O v. Arnold-Williams, No. CV-04-0192-EFS, 2008 WL 4192033 (E.D. Wash. Aug. 27, 2008);

- Cuviello v. Cal Expo, No. 2:11–CV–2456 KJM, 2014 WL 1379873 (E.D. Cal. Apr. 8, 2014);

- Jaynes Corp. v. Amer. Safety Insurance Co., 2:10–cv–00764–MMD–GWF, 2014 WL 8735102 (D.Nev. Dec. 2, 2014); and

- Midmoutain Contractors, Inc. v. American Safety Indem. No. C10–1239-JLR, 2013 WL 5492952 (W.D. Wash. Oct. 1, 2013).

U.S. Gypsum Co. v. Pacific Award Metals, Inc., Not Reported in F.Supp.2d (2006)

2006 WL 1825705
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

UNITED STATES GYPSUM COMPANY, Plaintiff,
v.
PACIFIC AWARD METALS, INC., Defendant.

No. C 04-04941 JSW. | July 3, 2006.

**Attorneys and Law Firms**

David Leon Bilsker, Howrey Simon Arnold & White, San Francisco, CA, Michael M. Geoffrey, Chief Intellectual Property Counsel USG Corporation, Michael P. Padden, Thomas W. Jenkins, Howrey Simon Arnold & White, Chicago, IL, for Plaintiff.

Amanda Fox, Perkins Coie LLP, Menlo Park, CA, David Leon Bilsker, Howrey Simon Arnold & White, San Francisco, CA, for Defendant.

**ORDER GRANTING JOINT MOTION TO VACATE CLAIM CONSTRUCTION ORDER AND ORDER GRANTING SUMMARY JUDGMENT OF NON-INFRINGEMENT AND TO ENTER DISMISSAL ORDER**

JEFFREY S. WHITE, District Judge.

**\*1** This matter comes before the Court upon consideration of the parties' joint motion to vacate this Court's Claim Construction Order dated November 8, 2005 and the Order Granting Defendant's Motion for Summary Judgment of Non-Infringement dated March 1, 2006.

**ANALYSIS**

On June 30, 2006, the parties executed a Settlement Agreement in this matter. Pursuant to the terms of that agreement, the parties ask the Court to vacate its rulings on claim construction and summary judgment and to dismiss the matter with prejudice. A district court may vacate an order granting judgment upon consideration of " 'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to re-litigation of unreviewed disputes.' " *American Games, Inc. v. Trade Products, Inc.,* 142 F.3d 1164, 1168 (9th Cir.1998) (citing *Dilley v. Gunn,* 64 F.3d 1365, 1370-71 (9th Cir.1995) (quoting *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720, 722 (9th Cir.1982))).

In this case, however, the claims construction order and order granting summary judgment were interlocutory in nature and did not fully adjudicate the rights and claims of the parties. Thus, they can be vacated at any time prior to final judgment. *See, e.g., Persistence Software, Inc. v. The Object People, Inc.,* 200 FRAT 626, 627 (N.D.Cal.2001); Fed.R.Civ.P. 54(b). In support of their motion, the parties contend that the agreement to file the instant motion was a significant factor in successfully resolving this litigation. The Court concludes that there are no considerations that would justify denial of the motion. Accordingly, the parties' joint motion to vacate is GRANTED.

**CONCLUSION**

For the foregoing reasons, the Court's Claim Construction Order dated November 8, 2005 (Docket No. 78) and the Court's Order Granting Defendant's Motion for Summary Judgment of Non-Infringement dated March 1, 2006 (Docket No. 160) are VACATED.

It is FURTHER ORDERED that Plaintiff's claims against Defendant and Defendant's counterclaims against Plaintiff are HEREBY DISMISSED WITH PREJUDICE. The Clerk is directed to close the file.

**IT IS SO ORDERED.**

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

De La O v. Arnold-Williams, Not Reported in F.Supp.2d (2008)

2008 WL 4192033
Only the Westlaw citation is currently available.
United States District Court,
E.D. Washington.

Maria DE LA O, et al., Plaintiffs,
v.
Robin ARNOLD-WILLIAMS, et al., Defendants.
Maria Fernandez, et al., Plaintiffs,
v.
Department of Social and Health Services, et al.,
Defendants.

Nos. CV-04-0192-EFS, CV-05-0280-EFS. | Aug. 27,
2008.

**Attorneys and Law Firms**

D. Ty Duhamel, Joachim Morrison, Columbia Legal
Services, Wenatchee, WA, Gregory D. Provenzano,
Columbia Legal Services, Olympia, WA, Katrin E. Frank,
Timothy K. Ford, McDonald Hoague & Bayless, Seattle,
WA, for Plaintiffs.

Ann C. Essko, Carrie L. Bashaw, Michael Patrick Lynch,
Victor M. Minjares, Attorney General of Washington,
Olympia, WA, John K. McIlhenny, Jr., Kenneth Orcutt,
Office of the Attorney General Olympia, WA, for
Defendants.

**ORDER GRANTING JOINT MOTION TO VACATE
ORDERS DECLARING RCW 4.24.350(2)
UNCONSTITUTIONAL AND GRANTING JOINT
MOTION (Ct.Rec.798) TO APPROVE CLASS
SETTLEMENT WHICH IS CONDITIONED A
COURT ORDER VACATING ORDERS
DECLARING RCW 74.15.030(7), RCW 74.15.080(1),
WAC 388.296.0450 and WAC 388.296.0520 (Ct. Recs.
511 and 745)**

EDWARD F. SHEA, District Judge.

**\*1** Before the Court are two motions. Plaintiffs and State
Defendants jointly ask the Court to vacate its rulings
declaring unconstitutional RCW 4.24.350(2) (Ct. Recs.
289 and 518) and also, as a condition of the Class
Settlement, to vacate its rulings declaring unconstitutional
RCW 74.15.030(7), RCW 74.15.080(1), WAC

388.296.0450, and WAC 388.296.0520 (Ct. Recs. 511 &
745). Ty Duhamel and Joachim Morrison appeared on
behalf of the *Fernandez* Plaintiffs, and Katrin E. Frank
appeared on behalf of the *De La O* Plaintiffs. Several
Plaintiffs also attended. Appearing for State Defendants
were Carrie Bashaw and John McIlhenny, Jr.

**A. Background**
On August 12, 2008, the Court entered an Order
Approving Class Settlement. (Ct.Rec.828.) In a separate
Order, the Court indicated that it would grant the motions
asking for vacatur of its Orders holding the pertinent
statutes and regulations unconstitutional if it approved the
proposed Class Settlement. (Ct.Rec.830.) The Court
intended to enter that Order some weeks ago but
overlooked it. Having approved the settlement, the Court
now addresses the basis for vacating the pertinent Orders
as identified above.

**B. Standard**
The Court's authority to vacate these Orders is found in
Federal Rule of Civil Procedure 54(b), which states:

> [A]ny order or other decision,
> however designated, that
> adjudicates fewer than all the
> claims or the rights and liabilities
> of fewer than all the parties does
> not end the action as to any of the
> claims or parties and may be
> revised at any time before the entry
> of a judgment adjudicating all the
> claims and all the parties' rights
> and liabilities.

FED. R. CIV. P. 54(b) (2008). A court has complete
power over interlocutory orders made therein and has
authority to revise them when it is "consonant with
equity" to do so. *Simmons v. Brier Bros. Co.,* 258 U.S. 82,
42 S.Ct. 196, 66 L.Ed. 475 (1922); *see U.S. Gypsum Co.
v. Pac. Award Metals,* 2006 WL 1825705 (N.D.Cal.2006)
(agreeing to vacate an interlocutory order at the parties'
request).

Where, as here, the Court is being asked to vacate its
rulings finding state statutes and regulations are
unconstitutional, the remaining parties' interests to a
lawsuit is only one of several factors that the Court
considers. In considering vacatur of its ruling(s), a district

De La O v. Arnold-Williams, Not Reported in F.Supp.2d (2008)

court should evaluate whether all parties involved in the ruling(s) request and agree to vacatur as a condition of a proposed settlement of the action; whether the ruling(s) held a law or regulation unconstitutional and, if so, what public interest inheres in the ruling; whether laws or regulations have been enacted that remedy the constitutional defect found by the judge thereby securing the public interest in the constitutionality of the laws; whether a former party to the action would be adversely affected by vacatur; and whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement of the action. These considerations immediately present themselves in this case though there may well be other considerations in a different case.

**C. Application and Analysis**
**\*2** Plaintiffs filed this lawsuit in order to prevent the State child care and fraud inspectors from wrongfully entering and searching day care provider homes and seizing personal documents. The Court found RCW 74.15.050, RCW 74.15.080, WAC 388-296-040, and WAC 388-296-0520 unconstitutionally overbroad. (Ct.Rec.511.) The State represented that it needed time to go through the traditional process to adopt emergency regulations to remedy the defects found in those regulations. The State further represented that it would abide the Court's ruling on those regulations and would not conduct activities under those regulations or statutes that would violate the Court's rulings. Based on those representations and the benefit to all parties from such State action, the Court held in abeyance for several months a motion to enjoin enforcement of those statutes and regulations in order to allow the State to draft, file, and ultimately adopt the necessary emergency regulations to remedy their constitutional defects and those of the related statutes. (Ct.Rec.511.) The State Defendants promptly promulgated emergency regulations effective December 18, 2006, which effectively narrowed the time and place of inspections. (Ct.Rec.513.) Ultimately, the Court declined to enter an injunction because, "[T]he amended provisions sufficiently narrow the time and place of inspections to render the warrantless searches constitutional, if conducted in accordance with the revised regulations." (Ct.Rec.745, p. 8,ll.8-10.) This provided the Plaintiffs individually and as a Class with the result sought.

The Proposed Class Agreement provides the Class with specific enforceable protections against the Department of Early Learning (DEL), which agreed to be a party to the agreement, including (1) the right to receive a Home Entry Letter[1] setting forth the provider's rights and (2)

modifications to the Department of Fraud Investigations investigator manual that limit an investigator's authority. Importantly, the Proposed Class Agreement provides these protections upon Court approval. In comparison, the State Defendants' appeal of the qualified immunity rulings will likely not be resolved until 2010 and then trial will likely not occur until 2011. The certain cost of continuing the case will be significant and the results of both the current State appeal and the action itself are uncertain with considerable risk of an adverse outcome for Plaintiffs. Additionally, the remedial regulations enacted by the State benefit both the Plaintiffs and the public interest in the constitutionality of the laws of the State of Washington. Further, the Proposed Class Agreement provides the individual Plaintiffs with compensation for past constitutional violations. Each of the named Plaintiffs will receive $45,000.00; Columbia Legal Services will receive $350,000.00 in fees and costs for its diligent representation of Plaintiffs. The Court has read with considerable attention the Declaration of D. Ty Duhamel In Support of Joint Motion to Tentatively Approve Class Settlement (Ct.Rec.801) and is persuaded by the detailed description of the work of counsel and the benefits to Plaintiffs and Class that vacatur is just. Based on the above, the Court finds vacatur of the Orders finding unconstitutional the specific statutes and related regulations will better serve the Class, the individual Plaintiffs, and the public.

**\*3** Next, the Court turns to RCW 4.24.350(2)-the statute that was the basis for the counterclaim filed by the individual Mattawa Defendants. RCW 4.24.350(2) gives judicial officers, prosecuting authorities, or law enforcement officers the right to file a claim(s) or counterclaim(s) for what amounts to malicious prosecution against those who sued them. The Court found that section of the statute unconstitutional. (Ct.Rec.289.) That ruling and the Court's ruling denying individual Mattawa Defendants qualified immunity under § 1985 were appealed. (Ct.Rec.568.) The State Defendants filed a separate appeal (Ct.Rec.574), which was later dismissed by the Ninth Circuit (Ct.Rec.653).

In due course, the Plaintiffs and the individual Mattawa Defendants reached a satisfactory resolution. They filed a stipulation to dismiss their claims and counterclaims against each other. (Ct.Rec.720.) The Court permitted Plaintiffs to amend their complaint to remove those claims; the complaint was amended, and the individual Mattawa Defendants along with their counterclaims under RCW 4.24.350(2) were effectively removed from the case. This settlement thereby mooted the appeal by the individual Mattawa Defendants of the Court's ruling holding RCW 4.24.350(2) unconstitutional. The result is

De La O v. Arnold-Williams, Not Reported in F.Supp.2d (2008)

that the State is not now in a position to appeal the Court's interlocutory ruling declaring RCW 4.24.350(2) unconstitutional. *See Blair v. Shanahan,* 919 F.Supp. 1361, 1365 (N.D.Cal.1996). Indisputably, however, the constitutionality of RCW 4.24.350(2) is of considerable importance to the State because of its impact on state judicial officers, prosecuting authorities, and law enforcement officers. The State's inability to challenge the Court's RCW 4.24.350(2) ruling is an unintended result of the settlement between the individual Mattawa Defendants and the Plaintiffs, i.e., their dismissal mooted the appeal challenging the Court's RCW 4.24.350(2) counterclaim ruling. Further, vacatur works no injustice to the now non-party individual Mattawa Defendants. It achieves the very result sought in appealing the Court's ruling. Under these circumstances, the Court believes that justice requires the vacatur of this ruling.

Accordingly, **IT IS HEREBY ORDERED:**

1. The Joint Motion to Vacate Orders Declaring RCW 4.24.350(2) **(Ct.Rec.807)** Unconstitutional is **GRANTED.** The Court's September 25, 2006 Order Granting in Part and Denying in Part *De La O* Plaintiffs'

Motion for Partial Summary Judgment Declaring RCW 4.24.350 Unconstitutional and Dismissing Counterclaim **(Ct.Rec.289)** and January 3, 2007 Order Ruling on Motions for Reconsideration **(Ct.Rec.518)** are **VACATED.**

2. As previously memorialized, the Joint Motion seeking vacatur of Orders declaring RCW 74.15.030(7), RCW 74.15.080(1), WAC 388.296.0450 and WAC 388. 296.0520 unconstitutional **(Ct.Rec.798)** is **GRANTED.** The Court's December 20, 2006 Order Entering Rulings from November 2, 2006 Hearing **(Ct.Rec.511)** and Order Ruling on Motions for Reconsideration, Oral Motion for Clarification, and Injunction Requests Held in Abeyance **(Ct.Rec.745)** are **VACATED.**

**\*4 IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this *28th* day of August, 2008.

Footnotes

1      The Home Entry Letter is in English on one side and in Spanish on the reverse side.

---

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Cuviello v. Cal Expo, Slip Copy (2014)

2014 WL 1379873
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

Joseph P. CUVIELLO, et al., Plaintiffs,
v.
Cal EXPO, et al., Defendants.

No. 2:11–CV–2456 KJM EFB. | Signed April 8, 2014.

**Attorneys and Law Firms**

Joseph P. Cuviello, Redwood City, CA, pro se.

Gilbert Whitney Leigh, Gonzalez & Leigh, LLP, Matthew Lowe Springman, Matthew L. Springman, Attorney at Law, Trent J. Thornley, Law Office of Trent J. Thornley, San Francisco, CA, for Plaintiffs.

George A. Acero, Gordon Rees LLP, Sacramento, CA, Erich Joseph Lidl, Liedle, Lounsbery, Larson & Lidl, San Diego, CA, for Defendants.

*ORDER*

KIMBERLY J. MUELLER, District Judge.

**\*1** On December 20, 2013, the court heard argument on the parties' joint motion for vacatur. Plaintiff Cuviello appeared in propria persona; G. Whitney Leigh and Matthew Springman appeared for plaintiffs Bolbol and Campbell; Matthew Siroka appeared for plaintiff Ennis; Erich Lidl appeared telephonically for defendant Mayes; and George Acero appeared telephonically for defendant Cal Expo and the remaining individual defendants. After considering the parties' arguments, and Cal Expo's filing of January 10, 2014, the court GRANTS the motion.

**I. BACKGROUND**
On September 16, 2011, plaintiffs filed a complaint alleging violations of federal and state constitutional rights and state statutes stemming from their arrest on May 20, 2011 at Cal Expo as they protested the treatment of circus animals. Although defendant Cal Expo did not move to dismiss plaintiffs' challenge to its free speech

guidelines, the individual defendants sought to dismiss the claims against them.

On September 19, 2012, the court granted the motions to dismiss plaintiffs' Fourth Amendment and false arrest claims, a claim under 42 U.S.C. § 1985, a claim stemming from the officers' retention of plaintiffs' protest materials and a claim of false imprisonment, all without leave to amend. The court also dismissed with leave to amend claims against Menard, Robillard, Bartosik and May, namely, conspiracy claims under 42 U.S.C. § 1983, and claims of intentional infliction of emotional distress. The court denied the motion insofar as plaintiffs claimed that defendants' actions interfered with their First Amendment rights to free speech, were undertaken in retaliation for their protest, violated their right to be free of malicious prosecution and the right to equal protection, and also as to plaintiff Bolbol's claim of excessive force and a claim concerning the confiscation of plaintiffs' protest materials. ECF No. 29.

Plaintiffs filed their First Amended Complaint (FAC) on October 10, 2012. Defendants and Mayes filed motions to dismiss on October 24, 2012; plaintiffs filed their motion for reconsideration of the order dismissing the complaint on November 16, 2012.

On June 14, 2013, plaintiffs filed a motion for a temporary restraining order and preliminary injunction based on their professed desire to protest at the upcoming State Fair. ECF No. 103.

On July 12, 2013, the court granted the motion for a temporary restraining order in part and denied it in part and on July 27, 2013, entered a more detailed order on the requests for injunctive relief. ECF Nos. 124, 125.

On July 29, 2013, the court denied plaintiffs' November 2012 motion for reconsideration. It granted defendants' motion to dismiss plaintiffs' Fourth Amendment, due process, and malicious prosecution claims without leave to amend, and the equal protection claim with leave to amend. It also granted the motion to dismiss defendants Bartosik and May without leave to amend. ECF No. 126. The court denied the motion to dismiss the conspiracy claim as to defendants Craft, Walton, Whittington, Robillard, Tartarkis and Mayes; denied the motion to dismiss defendants Mayes and Tartarkis from the action completely; and dismissed the claims for damages for a violation of the free speech provisions of the California Constitution, for intentional infliction of emotional distress, and for a violation of the Bane Act, all without leave to amend. *Id.*

**\*2** Plaintiffs filed their Second Amended Complaint ("SAC") on August 19, 2013. ECF No. 131. Defendants filed a motion to dismiss it on September 5, 2013. ECF No. 134. At the argument on that motion, the court asked the parties whether they had explored settlement. They explained they had engaged in some discussions but wanted a ruling on the motion to dismiss before returning to settlement talks. ECF No. 141. Nevertheless, the court received the notice of tentative settlement before it finalized the order addressing the motion. ECF No. 142.

In the notice of tentative settlement, the parties informed the court they were waiting for approval of the terms by Cal Expo's Board of Directors and that the settlement is contingent on the court's agreement to vacate certain orders. *Id.*

On December 16, 2013, the parties filed a stipulation and proposed order shortening time to hear the parties' joint motion for vacatur, which the court granted, setting the hearing for December 20, 2013. ECF No. 143.

On December 17, 2013, the parties filed their joint motion, seeking to vacate the court's order on the motion to dismiss the original complaint and on the motion to dismiss the First Amended Complaint. *See* ECF No. 146. They represent that the settlement includes payment, Cal Expo's agreement to amend its Free Speech Guidelines, and the parties' stipulation jointly to request vacatur. They confirm the agreement is conditioned upon this court's granting this latter request. *Id.* at 2.

## II. ANALYSIS

In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (*"Bonner Mall"* ), the Supreme Court held that appellate court vacatur of district court judgments in the context of settlement agreements should be granted only in "exceptional circumstances." Those exceptional circumstances "do not include the mere fact that the settlement agreement provides for vacatur." *Id.* The Court emphasized the importance of considering the public interest when contemplating the equitable remedy of vacatur: "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U .S. Philips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting)). Thus, "quite apart from any considerations of fairness to the parties," vacatur disturbs

the "orderly operation of the federal judicial system" by deviating from the primary route Congress has prescribed for parties who seek relief from the legal consequences of judicial judgments: appeal as of right and certiorari. *Id.* at 27.

However, in *American Games, Inc. v. Trade Products, Inc.,* the Ninth Circuit distinguished *Bonner Mall* by holding that district courts, due to the "fact-intensive nature of the inquiry required," enjoy "greater equitable discretion when reviewing [their] own judgments than do appellate courts operating at a distance." 142 F.3d 1164, 1170 (9th Cir.1998). Therefore, a district court in this circuit, even in the context of mootness by settlement, may vacate one of its own judgments absent exceptional circumstances. *See id.* at 1168–69. The proper standard is the "equitable balancing test," which balances the hardships of the parties and the public interests at stake. *Id.* at 1166; *Zinus, Inc. v. Simmons Bedding Co.,* No. C 07–3012 PVT, 2008 WL 1847183, at \*1 (N.D.Cal. Apr.23, 2008). Some courts have said that in applying this balancing test, a court should consider "the parties' desire to avoid any potential preclusive effect; the parties' interest in conserving their resources; the public interest in the orderly operation of the federal judicial system; and the potential to conserve judicial resources." *White v. Shen,* No. C09–0989 BZ, 2011 WL 2790475, at \*1 (N.D.Cal. Jul.13, 2011); *Cisco Sys., Inc. v. Telcordia Tech., Inc.,* 590 F.Supp.2d 828, 831 (E.D.Tex.2008) (same).

**\*3** Both *Bonner Mills* and *American Games* considered requests to vacate judgments, rather than orders, as part of settlements. The instant case has not reached judgment and the parties are asking the court to vacate two interlocutory orders. Some courts have recognized that in a situation such as this "[a] court has complete power over interlocutory orders ... and has authority to revise them when it is 'consonant with equity' to do so." *De La O v. ArnoldWilliams,* Nos. CV–04–0192 EFS, CV–05–0280 EFS, 2008 WL 4192033, at \*1 (E.D.Wash. Aug.27, 2008) (quoting *Simmons v. Brier Bros. Co.,* 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922)); FED. R. CIV. P. 54 (stating that a court may modify "any order or other decision ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *see also Persistence Software, Inc. v. The Object People, Inc.,* 200 F.R.D. 626, 627 (N.D.Cal.2001) (stating the standard for vacatur under Rule 54(b) is less rigid than that under Rule 60); *Midmountain Contractors, Inc. v. Am. Safety Idem. Co.,* No. C10–1239JLR, 2013 WL 5492952, at \*4 (W.D. Wash. Oct. 1, 2013 (stating that district courts have

Cuviello v. Cal Expo, Slip Copy (2014)

" 'complete power' over non-final orders and may vacate or revise them 'at any time,' if doing so would be 'consonant with equity' ") (quoting *United States Gypsum Co. v. Pac. Award Metals, Inc.,* No. C–04–04941 JSW, 2006 WL 1825705, at *1 (N.D.Cal. July 3, 2006)).

When parties ask a court to vacate an interlocutory order, the court should consider several factors: "whether all the parties involved in the ruling(s) request and agree to vacatur as a condition of a proposed settlement of the action; ... whether a former party to the action would be adversely affected by a vacatur; and whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement of the action." *De La O,* 2008 WL 4192033, at *1.

However the court characterizes a party's request, it must be guided by equitable considerations in resolving it. In this case, all parties urge the court to vacate its two orders, noting the general judicial policy favoring settlement and this court's specific inquiries about the possibilities for settlement in this case, the parties' desire to conserve resources, the judicial resources that further litigation would consume, and the fact-specific nature of the two orders under consideration.

Although under *Bonner Mall* "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur," 513 U.S. at 29, in making its equitable determination, this court should give some weight to the fact that the settlement is conditioned upon vacatur. *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.,* 150 F.3d 149, 152 (2d Cir.1998) (relying in part on the fact that "the victor in the district court wanted a settlement as much as, or more than, the loser did"); *De La O,* 2008 WL 4192033, at * 1.

*4 The parties observe that as this case is still in the pleading phase, should the court reject vacatur, they will undertake further discovery and motion practice, resulting in greatly increased fees. The court notes also that the defendants have not yet answered, as the complaint and the amended complaints have drawn motions to dismiss. If the parties do not settle, the case will almost certainly proceed to cross-motions for summary judgment. If the case is not resolved on summary judgment, plaintiff estimates a several week trial, based on their experience of a trial of a similar claim in the Northern District. ECF No. 146 at 6 n. 1.

The parties' desire to conserve resources segues into a consideration of the judicial resources that further litigation would consume. The orders that the parties seek to vacate are 23 and 34 pages long respectively; the draft

of the order addressing the most recent motion to dismiss, now withheld, is 19 pages long. Further litigation would likely result in more lengthy hearings and orders, consuming significant judicial resources.

Balanced against these considerations is the impact of vacating the orders on the orderly progress of litigation. Although a district court's order is not precedential, "there is a 'systemic' interest in preserving district court judgments because 'they play a significant role in the development of decisional law by providing guidance to private parties with respect to the availability of remedies and to litigation strategy,' and they 'can also be useful to the courts of appeals in rendering decisions." *Philip Servs. Corp. v. City of Seattle,* Civil Action No. H–06–2518, 2007 WL 3396436 (S.D.Tex. Nov.17, 2007) (quoting *Cater v. Rosenberg & Estis,* No. 95 CIV. 10439(DLC), 1999 WL 13036, at *3 (S.D.N.Y.1999)). Even though plaintiffs suggest the basis of their request is not disagreement with the court's orders, they are seeking vacatur of an order they challenged through reconsideration as well as the order denying reconsideration. "To allow a party who steps off the statutory path [of appeal following an unfavorable judgment] to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would ... disturb the orderly operation of the federal judicial system." *Bonner Mall,* 513 U.S. at 27. While the court is not fully persuaded that plaintiffs' request is not a disguised attack on the resolution of issues contrary to plaintiffs' position, the request is tempered by the fact that vacatur will not cause the orders to vanish: they will remain in electronic research databases, albeit flagged, and so available for whatever guidance they may give to parties and other courts.

The court must also consider the public interest. Courts generally characterize this interest as "protecting district court precedents from 'a refined form of collateral attack....' " *NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.,* 488 F.3d 1065, 1068 (9th Cir.2007) (quoting *Bonner Mall,* 513 U.S. at 26). There also is a " 'significant public interest' in upholding free speech principles" and in regulations that do not infringe free expression. *Klein v. City of San Clemente,* 584 F.3d 1196, 1208 (9th Cir.2009) (quoting *Sammartano v. First Judicial Dist. Ct.,* 303 F.3d 959, 973 (9th Cir.2002)). Accordingly, the court asked Cal Expo to provide a copy of its proposed amendments to the Free Speech Guidelines.

*5 In the current guidelines, Section III, provision 4(a), provides generally that no individual, group, sign, banner or activity shall block or obstruct passage to and from the

Cuviello v. Cal Expo, Slip Copy (2014)

fairgrounds. The proposed revision to the guidelines provides instead as follows:

> Persons engaging in free expression activity shall not, individually or as a group, or with the use of signs, banners, or other items, obstruct the ingress or egress of persons or interfere in any way with those providing emergency services. Nor shall persons engaging in free expression activity act in a matter that is reasonably likely to obstruct the ingress or egress of persons or interfere in anyway with those providing emergency services. Further, any signs or banners shall not be rigid or contain sharp corners. If the signs or banners contain sticks or poles, the following rules shall apply: (1) no metal sticks or poles can be used; (2) no rectangular sticks or poles of more than¼ inch thick and 2 inches wide can be used; (3) no non-rectangular sticks or poles thicker than¾ may be used. Signs or banners meeting the above criteria may be taken outside of the free expression zones, so long as, additionally, the signs or banners do not exceed the width of 2 foot by 2 foot or contain sticks or poles longer than 3 feet.

*Id.* at 4.

There also are proposed changes to provision 4(m) of Section III, which limits leafleting to designated Free Expression Zones. The proposed amended provision reads:

> Individuals or groups utilizing the free expression zones may distribute leaflets, pamphlets or other materials to be handed to the public. These leaflets, pamphlets or other materials may be distributed from outside the confines of the free expression zone space, so long

as the persons engaging in leafleting do not obstruct the ingress or egress of persons or interfere in any way with those providing emergency services. Further, leaflets or other material distributed by persons engaging in free expression activity shall not be placed on cars, left unattended in a manner that can cause the leaflets to be blown away, or discarded in locations other than waste or recycling receptacles.

*Id.*

The amendments to provision 4(m) reflect this court's order granting plaintiffs' request for a temporary restraining order, allowing them to leaflet outside the free expression zones during the State Fair, as the court found the First Amendment required. ECF No. 124. The changes to 4(a) will provide clarity to those groups who seek to augment any vocal protest with advocacy materials and so promote First Amendment values. While Cal Expo might adopt the proposed provisions in any event, approving the settlement now will ensure these changes are in place before the 2014 State Fair.

Considering all of the relevant factors, the court finds the parties' desire to conserve their resources, the potential to conserve judicial resources, and the public interest in vindicating free speech rights favor granting the vacatur.

*6 IT IS THEREFORE ORDERED:

1. The parties' joint motion for vacatur, ECF No. 146, is granted;

2. The court vacates its orders of September 19, 2012, ECF No. 29, and July 29, 2013, ECF No. 126;

3. Defendants' motion to dismiss the second amended complaint, ECF No. 134, is denied as moot; and

4. The parties are directed to file dispositional documents within thirty days of the date of this order.

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Cuviello v. Cal Expo, Slip Copy (2014)

Jaynes Corp. v. American Safety Indem. Co., Slip Copy (2014)

2014 WL 8735102
Only the Westlaw citation is currently available.
United States District Court,
D. Nevada.

JAYNES CORPORATION, a New Mexico
Corporation doing business in Nevada, Plaintiff,
v.
AMERICAN SAFETY INDEMNITY COMPANY,
licensed to do business in the State of Nevada;
Nevada Contractors Insurance Company, Inc.,
licensed to do business in the State of Nevada; and
Does 1–10, inclusive, Defendants.

No. 2:10–cv–00764–MMD–GWF. | Signed Dec. 2,
2014. | Filed Dec. 3, 2014.

**Attorneys and Law Firms**

Pamela A. McKay, McKay Law Firm, Chtd., Las Vegas,
NV, for Attorneys for Appellant/Defendant American
Safety Indemnity Company.

Nicholas M. Wieczorek, Morris Polich & Purdy LLP, Las
Vegas, NV, for Attorneys for Appellee/Plaintiff Jaynes
Corporation.

**STIPULATED MOTION TO STRIKE AND
VACATE ORDER (DOC. # 57) PURSUANT TO
CONDITIONAL SETTLEMENT BETWEEN
JAYNES CORPORATION AND AMERICAN
SAFETY INDEMNITY COMPANY**

MIRANDA M. DU, District Judge.

**\*1** Defendant/Appellant AMERICAN SAFETY
INDEMNITY COMPANY (ASIC), by and through its
attorney of record, the McKay Law Firm, Chtd., and
Plaintiff/Appellee JAYNES CORPORATION (Jaynes),
by and through its attorney of record, Morris Polich &
Purdy LLP, hereby submit a Stipulated Motion to Strike
and Vacate the Order (Doc. # 57) on the parties'
Cross–Motions for Summary Judgment (Doc. # 29 and
38.)

**I. PROCEDURAL BACKGROUND**

On May 24, 2010, Jaynes filed a complaint against ASIC
and Nevada Contractors Insurance Company (NCIC) in
this court, wherein Jaynes sought declaratory relief and
damages for an alleged breach of contract claim. (Doc. #
1.)

After being served with the summons and complaint,
ASIC answered the complaint. (Doc. # 17.)

Jaynes alleged it qualifies as an additional insured to the
commercial general liability policies ASIC issued to its
named insured. The parties filed Cross–Motions for
Summary Judgment regarding the issue of a duty to
defend. (Doc. # 29 and 38.)

On December 26, 2012, the Court issued an Order
granting Jaynes' Motion, and denying ASIC's Motion.
(Doc. # 57.)

Thereafter, Jaynes filed a second motion for summary
judgment regarding the amount of damages. (Doc. # 59.)
The Court denied the second motion. (Doc. # 77.)

On April 1, 2014, the Court conducted a bench trial, and
thereafter issued a Bench Order. (Doc. # 135.) On April
28, 2014, the court entered a judgment pursuant to the
Bench Order. (Doc. # 136.)

On May 23, 2014, AISC filed a Notice of Appeal. (Doc. #
145.) Pursuant to the 9th Circuit's Mediation Program, the
parties participated in a mediation wherein they
conditionally resolved the dispute on appeal.

The proposed settlement is subject to the Court granting
this stipulated Motion to Strike and Vacate the Order on
the parties' Cross–Motions for Summary Judgment (Doc.
# 57), which forms part of the issues on appeal. If this
stipulated Motion is not granted, the appeal will be
reinstated.

On November 20, 2014, the parties filed a stipulated
motion to voluntarily dismiss the appeal without prejudice
subject to reinstatement. (Doc. # 158.)

On November 26, 2014, the 9th Circuit Court of Appeals
issued an Order and Mandate to Dismiss the Appeal
without Prejudice subject to Reinstatement for the
purpose of the parties filing a stipulated Motion to Strike
and Vacate the Order (Doc. # 57) on the parties'
Cross–Motions for Summary Judgment in District Court,
which forms a part of the Settlement Agreement between
the parties.

Jaynes Corp. v. American Safety Indem. Co., Slip Copy (2014)

On December 1, 2014, the District Court issued an Order on the records of the District Court regarding the 9th Circuit Court of Appeals Order and Mandate Dismissing the Appeal without Prejudice subject to Reinstatement. (Doc. # 160.)

The parties, therefore, submit the instant Stipulated Motion to Strike and Vacate the Order (Doc. # 57) on the parties' Cross–Motions for Summary Judgment (Doc. # 29 and 38).

## II. *LAW AND LEGAL ARGUMENT*

### A. *Federal Rule of Civil Procedure 54*
*2 Federal Rule of Civil Procedure 54(b) governs non-final judgments, including "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed.R.Civ.P. 54(b).

Under Rule 54(b), the court has wide latitude to revise prior orders and an order "may be revised at any time before the entry of a judgment...." Fed.R.Civ.P. 54(b).

In the Ninth Circuit, a district court may vacate a judgment following settlement upon consideration of "the consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to re-litigation of unreviewed disputes." *Am. Games, Inc. v. Trade Prods., Inc.,* 142 F.3d 1164, 1168 (9th Cir.1998) (quotation marks omitted). No such inquiry is required under Rule 54(b).

Under Rule 54(b), district courts have "complete power" over non-final orders and may vacate or revise them "at any time," if doing so would be "consonant with equity." *United States Gypsum Co. v. Pac. Award Metals, Inc.,* No. C 04–04941 JSW, 2006 WL 1825705, at *1 (N.D.Cal. July 3, 2006); *De la O v. Arnold–Williams,* No. CV–04–0192–EFS, 2008 WL 4192033, at *1 (E.D.Wash. Aug. 27, 2008) (quotation marks omitted).

Courts that exercise Rule 54(b) power in the context of settlement have found vacating a prior order is "consonant with equity" if there are no reasons suggesting the order should not be vacated.

For example, in *United States Gypsum,* a district court in the Northern District of California vacated several orders under Rule 54(b), including a summary judgment order and a claims construction order, to facilitate settlement. (*United States Gypsum,* 2006 WL 1825705, at *1.) The court in that case required only that the agreement to

vacate "was a significant factor in successfully resolving this litigation," and that there were "no considerations that would justify denial of the motion." *Id.*

Likewise, in *De la O,* the court considered factors such as (1) whether all parties have agreed to vacate the order as a condition of the proposed settlement; (2) whether a former party to the action would be adversely affected by vacating the order; and (3) whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement. (*De la O,* 2008 WL 4192033, at *1.)

In this case, none of these considerations suggest denying the Stipulated Motion to strike and vacate is appropriate. First, a condition to settling the dispute between the parties is the court granting this motion; hence, the stipulated motion. The proposed resolution also conserves judicial resources in several respects, including not addressing the issues on appeal, and those that remain at the district court.

There is no suggestion that any former party to the case would be adversely affected by striking and vacating the Order since the Order at-issue is specific to ASIC, and not NCIC. Rather, the parties negotiated a resolution of this appeal that is conditioned on the court granting this Stipulated Motion. Therefore, the parties submit granting the Stipulated Motion pursuant to Rule 54 is proper.

### B. *Federal Rule of Civil Procedure 60*
*3 Federal Rule of Civil Procedure Rule 60 also provides this Court with authority to strike and vacate the Order on the Cross–Motions for Summary Judgment pursuant to a material term to a proposed settlement of this case.

In particular, Rule 60(b)(6) provides that a Court may set aside a final judgment or ruling for "any other reason that justifies relief" as the interests of justice require. *See In Re International Fibercom, Inc.,* 503 F.3d 933, 940 (9th Cir.2007) (Rule 60(b)(6) "should be liberally applied" to "accomplish justice").

The decision to vacate an order is addressed to the sound discretion of the district court and gives the court a grand reservoir of equitable power to do justice in a particular case. FRCP 60(b), 28 U.S.C.A; *Backlund v. Barnhart,* 778 F.2d 1386 (9th Cir.1985) (applying Washington law) (decision to vacate reviewed under broad abuse of discretion standard).

Here, to facilitate a conditional settlement, and as an express term in their negotiated settlement agreement,

**Jaynes Corp. v. American Safety Indem. Co., Slip Copy (2014)**

Jaynes and ASIC agreed that ASIC will file the instant Stipulated Motion to strike and vacate the Court's December 26, 2012 Order (Doc. # 57). On similar facts, courts have upheld this request.

In *Novell, Inc. v. Network Trade Center,* 187 FRD 657, 660 (D.Utah 1999), the parties to a trademark infringement dispute reached a settlement predicated on partial vacatur of the district court's prior rulings, leaving the remainder of the rulings intact and petitioned the court for a partial vacatur pursuant to FRCP 60(b)(5). *Id.* at 659.

The *Novell* court, noting the parties had good reason to seek vacatur, and that settlement, including vacatur, presented a simple and inexpensive way to accommodate both parties' interests, approved the motion and, as requested, vacated some but not all its prior rulings. *Id.* at 661. *See also, Lycos v. Blockbuster,* 2010 WL 5437226 (D.Mass.2010) (partial vacatur approved where settlement contingent on court's granting party's unopposed motion to vacate).

Here, the parties agreed as a condition to settlement that ASIC would seek vacatur of the Court's December 26, 2012 Order pursuant to the instant Stipulated Motion.

While the settlement agreement between the parties is anticipated to relieve the parties of any further obligations in this case, ASIC seeks the instant relief due to the continuing, citable nature of the prior Order, which may detrimentally impact ASIC in other, future cases.

Because the parties are willing to resolve the case and forego the appeal, ASIC believes the requested relief is justified to promote compromise and avoid expensive appeals. By striking and vacating the Order, ASIC obtains the recompense it desires from the resolution and it not compelled to continue to litigate on appeal.

The strong public policies of encouraging settlement and conserving judicial resources apply here; the parties submit no reason exists for the Court to not grant this Stipulated Motion.

### III. *CONCLUSION*

**\*4** The parties request the Court strike and vacate the Order on the Cross–Motions for Summary Judgment, which is a condition to a successful settlement of this action. If the Stipulated Motion is not granted, the appeal will be reinstated with the appellate court for all purposes.

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Midmoutain Contractors, Inc. v. American Safety Indem. Co., Slip Copy (2013)

2013 WL 5492952
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

MIDMOUTAIN CONTRACTORS, INC., Plaintiff,
v.
AMERICAN SAFETY INDEMNITY COMPANY, et
al., Defendants.

No. C10−1239JLR. | Oct. 1, 2013.

**Attorneys and Law Firms**

Charles K. Davis, Gregory L. Harper, Harper and Hayes
PLLC, Seattle, WA, for Plaintiff.

## ORDER GRANTING MOTION TO STRIKE

JAMES L. ROBART, District Judge.

*\*1* Before the court is American Safety Insurance
Company's ("ASIC") "Motion to Strike Part of Court's
September 5, 2012, Summary Judgment Order." (Mot.
(Dkt.# 163).) The parties have reached a settlement in this
matter that resolves all claims but, as one of its terms,
permits ASI C to make this motion. (Andersen Decl.
(Dkt.# 164) ¶¶ 2–4.) In the motion, which is unopposed,
ASI C asks the court to strike a portion of the court's prior
summary judgment order that ASI C believes would
establish precedent contrary to its interests. (See Mot. at
4.) The court GRANTS the motion.

## I. BACKGROUND

This is an insurance coverage dispute. M idMountai n
served as the general contractor to King County for
construction of a new wastewater conveyance pump
station in Kirkland, Washington, known as the Juanita
Bay Pump Station. (Mills Decl. (Dkt.# 90) ¶ 3.) M
idMountai n obtained an insurance policy from ASIC in
connection with the project and eventually made claims
on that policy. In this action, MidMountai n alleges that A
SI C breached material terms of the policy including its
duty to defend MidMountai n. (Am.Compl.(Dkt.# 42) ¶¶

70–84.) There were numerous other parties in the case as
well, but all have now settled or been dismissed. (See
generally Am. Compl.; Stip. Order of Dismissal (Dkt. #
161); Stip. Order of Dismissal (Dkt.# 166).) Indeed, this
case is now all but resolved. All parties have either been
dismissed or have settled. (See Mot. at 1.) MidMountai n
and A SIC are the only parties remaining, and they too
have reached a settlement agreement. (Id. at 1–2.)

Only one issue remains in the case. The settlement
agreement between MidMountai n and ASIC "includes as
a material term the ability of [ASIC] to make this motion"
to strike portions of a summary judgment order. (Id. at 2.)
This term is "part of the consideration for [ASIC's]
agreement to settle and forego any right to appeal prior
rulings...." (Id.) M idMountai n has agreed not to oppose
the motion. (Id.)

Accordingly, ASIC now moves to strike the following
portion of the court's prior order:

### a. Exclusion j(5)

Exclusion j(5) provides that there is no coverage for
"Property Damage" to "[t]hat particular part of real
property on which you or any contractors or
subcontractors working directly or indirectly on your
behalf are performing operations, if the 'property
damage' arises out of those operations." (Fisher Decl.
Ex. 1 at ASIC0073.) This exclusion applies only to
damage that occurred at the time Matti la was
performing operations. Dewitt Constr., 307 F.3d at
1135 (applying Washington law to policy language
identical, in relevant part, to that of Exclusion j(5));
Canal Ins. Co. v. Adair Homes, Inc. ("Canal 1" ),
737 F.Supp.2d 1294, 1301 (W.D.Wash.2010), aff'd 445
Fed. Appx. 938 (9th Cir.2011) (concluding that
exclusion identical to Exclusion j(5) "bars coverage for
damages occurring during [the insured's] construction
of the home"); Mid–Continent Cas. Co. v. Tital Constr.
Corp., No. 05–CV–1240 MJP, 2009 WL 1587215, at
\*3 (W.D.Wash. Jun.5, 2009), aff'd 440 Fed. Appx. 547
(9th Cir.2011) (same); see also Vandivort Constr. Co.
v. Seattle Tennis Club, 11 Wash.App. 303, 522 P.2d
198, 201 (Wash.Ct.App.1974) (holding that exclusion
similar to Exclusion j(5) applied to damages occurring
while insured was performing operations on the
property). Here, there is no allegation in the
Counterclaim regarding whether Matti la was
performing operations at the time the property damage
occurred. Therefore, Exclusion j(5) does not clearly
and unambiguously bar coverage.

Midmountain Contractors, Inc. v. American Safety Indem. Co., Slip Copy (2013)

**\*2** ASIC relies on *Canal Indemnity Co. v. Adair Homes, Inc.* ("*Canal II*"), 445 Fed. Appx. 938 (9th Cir.2011) (unpublished), and *Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group,* 37 Wash.App. 621, 681 P.2d 875 (Wash.Ct.App.1984), to argue that Exclusion j(5) applies to operations during construction, as well as to direct damages stemming from the alleged defective construction, regardless of when those damages occurred. (Resp. to MM Mot. at 20–22.) Neither case changes the court's conclusion. First, as an unpublished disposition or order, *Canal II* is not binding on the court. *See* Ninth Ci r. R. 36–3(a). The trial court order that *Canal II* affirmed, however, supports the court's conclusion that Exclusion j(5) applies only to property damages occurring during construction. *See Canal I,* 737 F.Supp.2d at 1301–02 ("[T]he plain and unambiguous language of the ongoing operations exclusion bars coverage for the Pearsons' property damages occurring during construction of the residence."). Second, *Harrison Plumbing* does not assist the court in interpreting the scope of Exclusion j(5) because it involved a differently worded exclusion. *See Harrison Plumbing,* 681 P.2d at 878–79 (construing policy that excluded "property damage ... to ... that particular part of any property, not on premises owned by or rented to the insured, ... the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured ...") (alterations in original). Accordingly, the court concludes that, based on the allegations in the Counterclaim, Exclusion j(5) does not bar coverage.

**b. Exclusion j(6)**

Exclusion j(6) provides that there is no coverage for "Property Damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Fisher Decl. Ex. 1 at ASIC0073.) Exclusion j(6), however, "does not apply to 'property damage' included in the 'products-completed operations hazard.' " (*Id.*) In other words, Exclusion j(6) is itself subject to an exception for damages included in the PCOH. If damages fall within the PCOH, then Exclusion j(6) does not apply. The PCOH includes in relevant part "all ... 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still within your physical possession; or (2) Work that has not yet been completed or abandoned." (*Id.* at ASIC0081.) The PCOH, therefore, is subject to its own exceptions. For

the sake of clarity, the court provides the following summary of the exceptions relevant to Exclusion j(6). First, if Exclusion j(6) applies, then MidMountai n is not entitled to coverage. If, however, the PCOH applies, then Exclusion j(6) does not apply. Nevertheless, if the damage at issue occurred while Mattila's work was still ongoing, then the PCOH does not apply. Exclusion j(6) does apply, and M idMountai n is not entitled to coverage. *See Mid–Continent,* 2009 WL 1587215, at * 4 (interpreting identical policy language).

**\*3** ASIC argues that because the Counterclaim alleged that Matti la never completed its work on the Project, the PCOH does not apply and Exclusion j(6) clearly and unambiguously applied to bar coverage. (*See* Resp. to MM Mot. at 21–22.) To come to this conclusion, ASI C asserts that Mattila did not "abandon" the work within the meaning of the exclusion to the PCOH. (*Id.*) ASIC relies on *Claredon American Insurance Co. v. General Security Indemnity Co. of Arizona,* 193 Cal.App.4th 1311, 124 Cal.Rptr.3d 1 (Cal.Ct.App.2011), a case in which the court interpreted a PCOH provision identical to the one at issue here. (Resp. to MM Mot. at 21–22.) In *Claredon,* a homeowner hired a contractor to build a residence but fired the contractor before the home had been completed. 193 Cal.App.4th at 1314, 124 Cal.Rptr.3d 1. The court concluded that the project had not been abandoned within the meaning of the PCOH in the contractor's CGL policy. *Id .* at 1319, 124 Cal.Rptr.3d 1. In coming to this conclusion, the court construed the term "abandoned" as requiring that "both sides to [the] contract expressly announce their intention to abandon it, releasing both sides from their respective duties under the contract." *Id.* Applying the construction of "abandon" articulated by the *Claredon* court, ASIC contends that there was no mutual intent here because M idMountai n and Matti la filed claims against one another for breach of contract, thereby demonstrating a mutual intent to enforce their contract. (Resp. to MM Mot. at 21.)

The court declines to follow *Claredon* here. Under Washington law, the court must give the Policies a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser,* 15 P.3d at 122 (quoting *Am. Nat'l Fire Ins.,* 951 P.2d at 256). When a clause is susceptible to two or more reasonable interpretations, the clause is considered ambiguous and it is construed in favor of the insured. *Id.* The term "abandon" is not defined in the ASIC Policies, and it is susceptible to at least two

reasonable interpretations when read in context. "The term could, for example, be read as requiring only that the insured have 'abandoned' its work, or as requiring that all parties to the construction contract have 'abandoned' the project." *Thomas v. Nautilus Ins. Co.,* No. CV 11–40–M–DWM–JCL, 2011 WL 4369519, at * 10 (D.Mont. Aug.24, 2011) (construing a PCOH clause identical to the one at issue here).[1] Because the term "abandon" is ambiguous, the court construes it in M idMountai n's favor to require only that the insured "abandon" its work. *See Weyerhaeuser,* 15 P.3d at 122. In light of this construction, the court concludes that Exclusion j(6) was not clearly and unambiguously applicable under the facts alleged in the Counterclaim.
(Mot. at 2; 9/5/12 Order (Dkt.# 142) at 13–17.) As the parties agreed, MidMountain does not oppose the motion. (Mot. at 1–2.)

## II. DISCUSSION

**\*4** Federal Rule of Civil Procedure 54(b) governs this motion. ASI C brings the motion under Federal Rule of Civil Procedure 60(b), but that rule only provides grounds for relief from a "[f]inal judgment, order, or proceeding." Fed.R.Civ.P. 60(b). ASIC's motion concerns a non-final order that adjudicates fewer than all the claims against fewer than all the parties. (*See* 9/5/12 Order.) Thus, Rule 60 does not apply. Instead, Federal Rule of Civil Procedure 54(b) applies, which governs non-final judgments including "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed.R.Civ.P. 54(b).

Under Rule 54(b), the court has wide latitude to revise prior orders–much wider than under Rule 60. Under Rule 54(b), a non-final order "may be revised at any time before the entry of a judgment...." Fed.R.Civ.P. 54(b). This standard is not as stringent as the standard that would apply under Rule 60. Under Rule 60, there is a fairly robust jurisprudence establishing various inquiries courts must undertake when a party moves to vacate a prior judgment following a settlement. *See, e.g., U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *Stolz v. Am. Int'l Life Assurance Co. of N.Y.,* 922 F.Supp. 435 (W.D.Wash.1996). For example, in the Ninth Circuit, a district court may vacate a judgment following settlement upon consideration of "the consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to

re-litigation of unreviewed disputes." *Am. Games, Inc. v. Trade Prods., Inc.,* 142 F.3d 1164, 1168 (9th Ci r.1998) (quotation marks omitted). No such inquiry is required under Rule 54(b). Under Rule 54(b), district courts have "complete power" over non-final orders and may vacate or revise them "at any time," if doing so would be "consonant with equity." *United States Gypsum Co. v. Pac. Award Metals, Inc.,* No. C 04–04941 JSW, 2006 WL 1825705, at * 1 (N.D.Cal. July 3, 2006); *De la O v. Arnold–Williams,* No. CV–04–0192–EFS, 2008 WL 4192033, at * 1 (E.D.Wash. Aug.27, 2008) (quotation marks omitted).

Courts exercising Rule 54(b) power in the settlement context have found that vacating a non-final order is "consonant with equity" if there are no reasons suggesting the order should not be vacated. For example, in *United States Gypsum,* a district court in the Northern District of California vacated several orders under Rule 54(b), including a summary judgment order and a claims construction order, to facilitate settlement. *United States Gypsum,* 2006 WL 1825705, at * 1. The court in that case required only that the agreement to vacate "was a significant factor in successfully resolving this litigation," and that there were "no considerations that would justify denial of the motion." *Id.* Likewise, in *De la O,* the court considered factors such as (1) whether all parties have agreed to vacate the order as a condition of the proposed settlement; (2) whether a former party to the action would be adversely affected by vacating the order; and (3) whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement. *De la O,* 2008 WL 4192033, at * 1.

**\*5** In this case, none of these considerations suggest denying the motion to vacate. First, it is clear that allowing this motion was a factor in successfully resolving the litigation. (Mot. at 2–3; Andersen Decl. ¶ 3.) This suggests to the court that it should not simply deny the motion out of hand given that a settlement conserves judicial resources and allows the court to focus its attention on other cases. Second, all parties have, to some extent, agreed to vacate the order: specifically, M idMountai n agreed not to oppose the motion. (Andersen Decl. ¶ 3.) Third, there is no suggestion that any former party to the case would be adversely affected by vacating the order; all other claims and parties in this case have either settled or been dismissed. (*See* Dkt.161, 166.)[2] There are no other reasons, either in the record, in ASIC's briefing, or that the court can discern, that suggest it would be harmful or inequitable in any way to grant this motion.

Accordingly, the court follows the approach taken by the

**Midmoutain Contractors, Inc. v. American Safety Indem. Co., Slip Copy (2013)**

courts in *United States Gypsum* and *De la O* and GRANTS the motion because "no considerations justify denial of the motion." 2006 WL 1825705, at * 1. Although there are no equitable considerations that strongly compel granting the motion, doing so is "consonant with equity" as required by *De la O*, 2008 WL 4192033, at * 1. The court will not diverge from the approach taken by these courts absent some valid reason to do so or some precedent suggesting a different approach is warranted.

### III. CONCLUSION

For the foregoing reasons, the court GRANTS MidMountain's motion to strike (Dkt.# 163) and STRIKES the above-quoted portion of the court's prior order.

### Footnotes

1    The Magistrate Judge's findings and recommendations in *Thomas* were reviewed *de novo* by the district court, which determined, among other things, that the Magistrate Judge correctly construed the term "abandoned" in the insurance policy. *Thomas v. Nautilus Ins. Co.,* No. CV 11–40–M–DWM–JCL, 2011 WL 4369496, at * 1 (D.Mont. Sept.19, 2011).

2    The court declines to rely on the third consideration articulated in *De la O*: whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement. *De la O*, 2008 WL 4192033, at *1. The court is not privy to the parties' settlement agreement and does not know its benefits like in *De la O*. Further, it is not clear that the settlement will not be consummated if the court denies this motion. (*See* Mot.) Thus, this consideration has no relevance in this case.

---

**End of Document**                                  © 2015 Thomson Reuters. No claim to original U.S. Government Works.